UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ANTONIO HUNTER, | ) | |
|---|---|---|
| | ) | No. 13 CV 2569 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| KUL SOOD, et al., | ) | |
| | ) | April 16, 2014 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Before the court is the motion of Defendants S.A. Godinez, Joseph Yurkovich, and Roberta Fews (collectively, the "IDOC Defendants") to bifurcate and stay discovery and trial of Plaintiff Antonio Hunter's claims against them until all claims against Defendants Dr. Kul Sood and Wexford Health Sources, Inc. ("Wexford," together with Dr. Sood, the "Wexford Defendants") have been resolved.[1] The motion is denied for the following reasons:

**Background**

Antonio Hunter filed this action on April 5, 2013, against the Wexford Defendants and the IDOC Defendants asserting deliberate indifference to his serious medical needs in violation of his constitutional rights under 42 U.S.C. § 1983. (R. 1, Compl., ¶¶ 57-58.) According to Hunter's complaint, he experienced

---

[1] The IDOC Defendants' motion only seeks bifurcation from Hunter's claims against Dr. Sood with no mention of Hunter's claims against Wexford. (R. 73, IDOC Defs.' Mot. at 5.) Since Wexford has not joined the current motion, this court construes the IDOC Defendants' motion as seeking bifurcation from Hunter's claims against both Dr. Sood and Wexford.

intense abdominal pain and rectal bleeding for several months while he was incarcerated at Hill Correctional Center ("Hill") from 2010 to 2011, and unsuccessfully sought medical treatment for his condition. (Id. ¶¶ 6-12.) Hunter claims that when he was finally examined by Dr. Sood, a Wexford physician at Hill, he diagnosed Hunter with rectal prolapse. (Id. ¶ 13.) But once Dr. Sood learned from Hunter that he would be released from prison in five months, Hunter alleges that Dr. Sood declined to treat Hunter and instead instructed him to seek treatment from Cook County Hospital once released. (Id. ¶ 14.) When Hunter went to Cook County Hospital after his release, doctors there informed him that he would need surgery to repair the prolapse, and that surgery could have been avoided if he had received proper treatment earlier. (Id. ¶¶ 27-28.) Hunter claims that as a result of Dr. Sood's decision not to treat him at Hill, he suffered tremendous pain and embarrassment, and that complications from subsequent surgeries may have rendered him permanently impotent. (Id. ¶¶ 24-26, 29-32.)

Hunter suspects that Dr. Sood had a financial incentive to deny him medical care under the terms of an agreement between Wexford and the Illinois Department of Corrections ("IDOC"). According to Hunter, Wexford receives monthly payments up to a set maximum amount from IDOC for the provision of medical services, but once Wexford's treatment charges exceed that cap, IDOC's payments to Wexford are reduced by that amount in excess of the annual limit. (Id. ¶ 20.)[2] Hunter claims

---

[2] Hunter alleges in paragraph 20 of his complaint, (R. 1), that:

2

that this provision motivates Wexford and its physicians, like Dr. Sood, to deny medical treatment to inmates to prevent incurring financial penalties. (Id. ¶¶ 22-23.)

In addition to suing the Wexford Defendants, Hunter is also suing the IDOC Defendants in their individual capacities, alleging that they had personal knowledge of the alleged deliberate indifference and that they implemented, enforced, or condoned a policy of denying medical treatment to inmates. (Id. ¶¶ 44-48.) According to Hunter, Defendant Godinez was the director of IDOC, Defendant Fews was the deputy director of the Office of Programs and Services at IDOC, and Defendant Yurkovich was the warden at Hill during the relevant time period. (Id. ¶¶ 36, 38, 40.)

On February 28, 2014, pursuant to Federal Rule of Civil Procedure 42(b), the IDOC Defendants brought the current motion to bifurcate Hunter's claims against them from his claims against the Wexford Defendants, and to stay discovery and trial on those claims until the claims against the Wexford Defendants have been resolved. (R. 73, IDOC Defs.' Mot. at 5.) On March 26, 2014, Hunter filed his opposition to the bifurcation motion, (R. 78, Pl.'s Resp.), along with his motion to amend his complaint, (R. 76, Mot. to Am.). Hunter's motion to amend seeks to add

---

> On information and belief, Wexford operates under a contract with the [IDOC] in which it receives monthly payments from the IDOC for the provision of medical services up to a set maximum amount called the Annual Hospital Utilization Threshold ("AHUT"). Once Wexford's billed charges for the provision of medical care exceed the AHUT, monthly payments to Wexford from the IDOC are reduced an amount equal to the amount that billed charges exceed the AHUT.

IDOC as a party defendant and to add allegations that IDOC violated the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, and the Rehabilitation Act, 29 U.S.C. § 794. (R. 76, Mot. to Am. ¶ 2.) Given the nature of the new claims, the resolution of the motion to amend does not impact this court's ruling on the current motion to bifurcate.

## Analysis

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b); *see also Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). Pursuant to this rule, a court may bifurcate trial of any issue when separation would promote judicial economy or avoid prejudice. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). Only one of these criteria needs to be satisfied for a court to order a separate trial. *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994). The decision to grant or deny bifurcation is a heavily fact-intensive analysis dependent upon the costs and benefits of bifurcation under the unique circumstances of each case. *Awalt v. Marketti*, No. 11 CV 6142, 2012 WL 1161500, at *10 (N.D. Ill. Apr. 9, 2012). The court exercises considerable discretion in making this determination. *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000).

**A.  Judicial Economy**

The IDOC Defendants argue that because Hunter's claims against them are dependent on a finding that Dr. Sood violated Hunter's constitutional rights,

4

proceedings should be bifurcated to avoid potentially unnecessary costs associated with discovery, summary judgment, and trial. (R. 73, IDOC Defs.' Mot. at 5, 7.) Hunter responds that he could still proceed against the IDOC Defendants even if a jury finds Dr. Sood and Wexford not liable, and that bifurcating Hunter's policy claims would only waste judicial resources because the alleged policy of withholding medical care based on inmates' release dates is "at the heart of the case against each defendant, including Dr. Sood and Wexford." (R. 78, Pl.'s Resp. at 7.) Hunter further contends that bifurcation would lead to costly disputes over how to differentiate between discovery requests addressing claims against the Wexford Defendants and claims against the IDOC Defendants given the substantial overlap of relevant information. (Id. at 6.)

This court first addresses whether a verdict in the Wexford Defendants' favor would foreclose Hunter's claims against the IDOC Defendants. Hunter maintains that pursuant to *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010), a jury could find the IDOC Defendants liable for Hunter's injuries under § 1983 even if it finds that Dr. Sood and Wexford are not liable. (R. 78, Pl.'s Resp. at 7.) In *Thomas,* defendant Cook County argued that pursuant to *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), a municipality cannot be held liable based on one of its police officer's actions if the jury finds in favor of the officer. *Thomas,* 604 F.3d at 305. Distinguishing the facts in *Heller,* the *Thomas* court held that a claim against a municipality can still stand, regardless of how a jury finds as to the individual officer, if the claim would not result in an inconsistent verdict and

5

the municipality's liability is not dependent on the actions of its officers. *Id.*; *see Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978) (holding that a local government unit can be directly liable under § 1983 when the execution of a government's policy or custom inflicts the constitutional injury at issue in the case). According to the Seventh Circuit, such a determination should consider "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Thomas*, 604 F.3d at 305.

As an initial matter, this case is unlike *Thomas* in that Hunter is not suing a municipality pursuant to *Monell*, but rather a private company, its employee, and prison officials in their individual capacities.[3] (See R. 1, Compl., ¶¶ 48-49, 52.) This is also not a case where any defendant has stipulated to liability if Dr. Sood is found to have violated Hunter's constitutional rights. *See, e.g., Elrod v. City of Chicago*, Nos. 06 CV 2505, 07 CV 203, 2007 WL 3241365, at *5 (N.D. Ill. Nov. 1, 2007) (collecting cases in which stipulations to liability were cited as support for bifurcation).

More importantly, the nature of the constitutional violation in this case makes it distinguishable from *Thomas* because the IDOC Defendants' liability is in fact dependent on Dr. Sood's actions such that a verdict in his favor would be

---

[3] The court notes that in some respects, Hunter's claim against the IDOC Defendants in their individual capacities appears to be an end-run around the Eleventh Amendment's protection of state agencies from § 1983 liability. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (holding that although *Monell* allowed for § 1983 claims against municipalities, states are still protected from suit).

inconsistent with a verdict against the IDOC Defendants.[4] To establish a § 1983 claim for the denial of medical care, a plaintiff must show that his medical need was objectively serious and that the defendants acted knowingly or with deliberate, reckless indifference to the risk posed by the serious medical need. *See Thomas*, 604 F.3d at 301. In *Thomas,* the court noted that because of the systemic problems at Cook County Jail, the defendant medical technicians could not adequately review inmates' medical requests, did not always have access to medical request forms, and often could not complete their rounds to monitor inmates' conditions. *Id.* at 299-300. The court reasoned that a verdict in favor of the medical technicians was not inconsistent with a verdict finding Cook County liable because the jury could have found that the medical technicians were not *deliberately* indifferent, but "simply could not respond adequately because of the well-documented break-downs in the County's policies for retrieving medical request forms." *Id.* at 305. As such, the *Thomas* court concluded that although the medical technicians were not themselves liable, the jury could still find Cook County liable because its policies led to the plaintiff's injuries. *Id.*

By contrast, the IDOC Defendants could not have caused injury to Hunter in the absence of violations by Dr. Sood. Hunter's claims against the IDOC Defendants in their individual capacities appear to be based on the theory that they had "personal knowledge of the deliberately indifferent provision of medical care challenged in this case" and that they "implemented, enforced, and/or condoned

---

[4] This court is mindful of the scope of its limited jurisdiction and makes this finding only in the context of determining what factors, if any, favor bifurcation.

these practices." (R. 1, Compl., ¶ 44.)  This theory first requires a finding that Dr. Sood was deliberately indifferent to Hunter's serious medical needs. (Id. ¶ 58.) Unlike in *Thomas*, this case does not involve an employee who could not provide adequate treatment because a policy, or a break-down in policies, prevented him from doing so. *See Thomas,* 604 F.3d at 305; *see also Kitchen v. Burge,* No. 10 CV 4093, 2012 U.S. Dist. LEXIS 158088, at *11 (N.D. Ill. Nov. 2, 2012). Rather, if Hunter's allegations are true, Dr. Sood *chose* to deny Hunter medical treatment because he had financial incentives to do so under the alleged policy implemented and condoned by Wexford and the IDOC Defendants. (R. 1, Compl., ¶ 19.) Dr. Sood's actions would be the "source of the alleged harm . . . and any 'policy' [would have] exerted harm through these actions, not independently of them." *See Veal v. Kachiroubas,* No. 12 C 8342, 2014 WL 321708, at *4 (N.D. Ill. Jan. 29, 2014) (internal quotations omitted) (quoting *Taylor v. Kachiroubas & Sharp v. Kachiroubas*, Nos. 12 CV 8321, 12 CV 8349, 2013 WL 6050492, at *4 (N.D. Ill. Nov. 15, 2013)).

On the other hand, if Hunter's allegations regarding Dr. Sood are not true, then the IDOC Defendants' alleged practice of condoning deliberate indifference through a policy incentivizing denial of care or of failing to provide medical care through other means "is not actionable under § 1983." *See Kitchen*, 2012 U.S. Dist. LEXIS 158088, at *12; *see also Heller*, 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally

8

excessive force is quite beside the point.") A verdict in Dr. Sood's favor would therefore preclude the IDOC Defendants from being liable, a fact which could support bifurcation.

However, any potential efficiency gains from first resolving claims against Dr. Sood are illusory because Hunter's claims against Wexford would still proceed, and discovery regarding policies at Hill would occur despite bifurcation. Hunter's theory of liability against Wexford is essentially that Dr. Sood denied Hunter treatment pursuant to a policy Wexford created and implemented. (R. 1, Compl., ¶¶ 50-53, 66-67.) This theory overlaps substantially with Hunter's claims against the IDOC Defendants. In fact, many of Hunter's allegations against Wexford and the IDOC Defendants are nearly identical. (Compare, e.g., R. 1, Compl., ¶¶ 41-42, 61-62, with id. ¶¶ 50-51, 66-67; see also id. ¶¶ 59-60.)

Hunter will likely be entitled to discovery on Wexford's role in creating and enforcing medical treatment policies, so staying similar discovery as to the IDOC Defendants would not conserve judicial resources. Rather, granting bifurcation could potentially result in "two rounds of litigation: two rounds of discovery; two rounds of dispositive briefing; culminating in two trials, likely comprising many of the same witnesses, who would therefore be called to testify two times[,]" if a jury finds that Dr. Sood violated Hunter's constitutional rights. *See Awalt,* 2012 WL 1161500, at *12. Whether policy claims "so overlap with the remaining claims as to undermine any efficiencies to be derived from bifurcation of discovery is a decision that must be made on a case-by-case basis." *Elrod,* 2007 WL 3241352, at *7.

Considering the allegations in this case, the court finds that bifurcation would likely only frustrate judicial economy rather than promote it.

Furthermore, since Hunter's claims against Wexford and the IDOC Defendants overlap, attempting to parse out which policy-related discovery requests are addressed to Wexford and which are addressed to the IDOC Defendants would only increase inefficiencies. *See, e.g., Terry v. Cook County Dep't of Corr.,* No. 09 C 3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) ("If the Court were to grant the bifurcation motion, the need for the parties to separate *Monell* evidence from individual liability evidence may further complicate rather than simplify these proceedings."). Documents and testimony regarding policies that Wexford allegedly implemented would likely be relevant to proving Hunter's policy allegations against the IDOC Defendants. Therefore this court agrees with Hunter that having to resolve disputes over which discovery requests target which set of Defendants in this case would lead to increased motion practice and delays.

Moreover, as conceded by the IDOC Defendants at the April 1, 2014 hearing, a verdict against the Wexford Defendants would not resolve the claims against IDOC Defendants in that the IDOC Defendants may still escape liability even if the Wexford Defendants are held to be liable for damages. In other words, if this matter was bifurcated, Hunter may have to try this case a second time on his claims against the IDOC Defendants. This possibility also weighs against bifurcating the policy claims. Accordingly, this court sees no basis in judicial economy for granting the IDOC Defendants' motion to bifurcate.

**B.     Prejudice**

Rule 42(b) provides that aside from promoting judicial economy, bifurcation may be warranted "to avoid prejudice." Fed. R. Civ. P. 42(b). The IDOC Defendants contend that "[e]vidence that Dr. Sood acted with deliberate indifference in his medical treatment of [Hunter] could prejudice the jury against the IDOC Defendants, who are not medical doctors and did [not] take part in [Hunter's] medical care." (R. 73, IDOC Defs.' Mot. at 8.) Hunter responds that any potential prejudice could be mitigated using limiting instructions, motions in limine, and other evidentiary restrictions. (R. 78, Pl.'s Resp. at 9-11.) Hunter further contends that he would suffer substantial prejudice from the increased cost and delay of participating in a two-stage proceeding. (Id. at 11.)

This court agrees with Hunter. Courts have at their disposal various tools for organizing trial to avoid unfair prejudice to litigants, including restricting evidence to its proper scope and "instructing the jury accordingly." *See Awalt*, 2012 WL 1161500, at *13 (citing Fed. R. Evid. 105); *see also Elrod,* 2007 WL 3241352, at *7 ("Generally, the issue of avoiding prejudice at trial is better addressed by application of the Rules of Evidence, rulings in limine, and limiting instructions."). Jurors are presumed able to follow instructions given by the court, and a properly instructed jury is capable of understanding and considering the evidence that is relevant to each legal theory. *See United States v. Joshua,* 648 F.3d 547, 554 (7th Cir. 2011); *Harding v. Sternes*, 380 F.3d 1034, 1046 (7th Cir. 2004). Jury

instructions, along with other evidentiary mechanisms, should alleviate the IDOC Defendants' concerns regarding unfair prejudice.

The IDOC Defendants also raise concerns about the scope of Hunter's requests for production, pointing out that responding to such discovery would be a costly undertaking. (See R. 73, IDOC Defs.' Mot. at 2-3, 7; R. 88, IDOC Defs.' Reply at 5-6, 8.) The court is cognizant that policy claims are often complex and that discovery related to Hunter's claims will likely incur substantial costs in time, money, and effort. *See Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007). However, to the extent that Hunter's policy-related discovery requests are overly broad or would impose undue burden and expense, the court can tailor them as necessary in response to a motion for a protective order. *See Cadiz v. Kruger*, No. 06 CV 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2007).

## Conclusion

For the foregoing reasons, the IDOC Defendants' motion for bifurcation is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**